IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NATIONAL WILDLIFE REFUGE ASSOCIATION,
DRIFTLESS AREA LAND CONSERVANCY, WISCONSIN
WILDLIFE FEDERATION, and DEFENDERS OF WILDLIFE

        Plaintiffs,      OPINION AND ORDER

 v.

                        21-cv-096-wmc & 21-cv-306

RURAL UTITLITIES SERVICE,
CHRISTOPHER MCLEAN, Acting Administrator,
Rural Utilities Service,
UNITED STATES FISH AND WILDLIFE SERVICE,
CHARLES WOOLEY, Midwest Regional Director, and
SABRINA CHANDLER, Manager, Upper Mississippi River
National Wildlife and Fish Refuge,
UNITED STATES ARMY CORPS OF ENGINEERS,
LIEUTENANT GENERAL SCOTT A. SPELLMON, Chief of
Engineers and Commanding General, U.S. Army Corps of
Engineers, COLONEL STEVEN SATTINGER, Commander
And District Engineer, Rock Island District, U.S. Army Corps of
Engineers, and COLONEL KARL JANSEN, Commander and
District Engineer, St. Paul District, U.S. Army Corps of Engineers,

        Defendants,

         and

AMERICAN TRANSMISSION COMPANY, LLC,
DAIRYLAND POWER COOPERATIVE, & ITC
MIDWEST LLC,

        Intervenor-Defendants.

---

  Plaintiffs National Wildlife Refuge Association, Driftless Area Land Conservancy, Wisconsin Wildlife Federation, and Defenders of Wildlife seek an injunction pending appeal, that would prohibit Intervenor-Defendants American Transmission Company, LLC ("ATC"), Dairyland Power Cooperative ("Dairyland") and ITC Midwest LLC ("ITC") from

continuing construction on the ninety-mile stretch of their preferred route for the Cardinal-Hickory Creek ("CHC") Transmission Line Project running from far Southwest Wisconsin near Cassville and the Mississippi River to Middleton in the center of Southern Wisconsin. (Dkt. #212.) Federal defendants have joined the intervenor-defendants' opposition to that motion.[1] (Dkts. ##228, 232.) Given the plaintiffs' limited likelihood of success of stopping the CHC line, as opposed to its crossing at a nationally protected wildlife and fish preserve, the court will again decline to enter such a sweeping injunction pending appeal.

BACKGROUND

The court provided a lengthy, list of undisputed facts and other findings in its previous decisions granting in part and denying in part plaintiffs' motions for preliminary injunction and for summary judgment. (Dkts. ##160, 175.) The following summary is intended to provide context for the current motion.

Since 2012, ATC, ITC, and Dairyland ("co-owners") have been working on approvals for and construction of the CHC project. (Def.'s Resp. to Pl.'s PFOF (dkt. #119) ¶ 3-5.) The project involves a proposed 345-kilovolt, 101-mile transmission line that will carry electricity from Iowa to Wisconsin. Among other things, defendants have proposed that the CHC Transmission Line cross a section of the Upper Mississippi River National Wildlife and Fish Refuge ("Refuge").

In their suit, plaintiffs asserted three, basic challenges to earlier, federal approvals of the preferred route of the CHC Transmission Line. First, plaintiffs claim that the

---

[1] Plaintiffs also moved for leave to file a reply brief (dkt. #242) and *Amicus Curiae* briefs (dkts. ##225, 227) which are granted and have been considered by the court.

Environmental Impact Statement ("EIS") prepared for the CHC project does not comply with the National Environmental Policy Act ("NEPA"). Second, they claim that the right-of-way permit and compatibility determination by the U.S. Fish and Wildlife Service ("Service") violated the National Wildlife Refuge System Improvement Act, as the project is not compatible with the purposes of the Refuge. Third, they claim that the United States Army Corps of Engineers ("Corps") violated NEPA, the Endangered Species Act, and the Clean Water Act by issuing general permits for the proposed project.

Plaintiffs also moved for a preliminary injunction at the start of this case, which the court granted with respect to "any work impacting jurisdictional waters of the United States as defined under 33 C.F.R. § 328.3." *Nat'l Wildlife Refuge Ass'n v. Rural Utitlities Serv.*, No. 21-CV-096-WMC, 2021 WL 5050073, at *10 (W.D. Wis. Nov. 1, 2021), *appeal dismissed sub nom. Driftless Area Land Conservancy v. Am. Transmission Co. LLC by ATC Mgmt. Inc.*, No. 21-3123, 2022 WL 1565356 (7th Cir. Mar. 9, 2022). At summary judgment, the court further granted summary judgment to plaintiffs on their first two claims but granted summary judgment to defendants with respect to the third. *Nat'l Wildlife Refuge Ass'n v. Rural Utitlities Serv.*, No. 21-CV-096-WMC, 2022 WL 136829 (W.D. Wis. Jan. 14, 2022). More specifically, the court found that the EPA's EIS and Record of Decision were insufficient, the proposed line was not compatible with the purposes of the Refuge, and a land transfer through the refuge would be impermissible. *Id*. at *1. However, the court did find that permits issued by the Corps under the Clean Water Act were legally acceptable. *Id*. at *19.

On March 9, 2022, the court entered judgment in favor of plaintiffs, but declined to enjoin the companies from construction activities permanently, given that some areas of the proposed route did not require permit permission. (Dkt. #203.) Intervenor-defendants appealed to the Seventh Circuit and asked for a stay of this court's judgment, which the Seventh Circuit declined to grant. Plaintiffs also asked the Seventh Circuit to enjoin all construction, which it declined to do without prejudice pending review by the district court.

## OPINION

As previously emphasized by this court, the entry of injunctive relief "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 376, 172 L. Ed. 2d 249 (2008). A party seeking injunctive relief must demonstrate as a threshold matter that it: (1) has a reasonable likelihood of success on the merits; (2) lacks an adequate remedy at law; and (3) will suffer irreparable harm if relief is not granted. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). Even if these elements are all met, the court must still balance the irreparable harm to the moving party with the harm an injunction would cause to the opposing party. *HH-Indianapolis, LLC v. Consol. City of Indianapolis & Cty. of Marion*, Indiana, 889 F.3d 432, 437 (7th Cir. 2018).

Given the unusual procedural posture here, however, a fulsome analysis of each factor is largely unnecessary. Specifically, plaintiffs asked for a permanent injunction when the court was entering judgment, which the court declined to enter. (Dkt. #203.) As such, plaintiffs' present motion is more a disguised motion for reconsideration than anything

4

else. Plaintiffs even acknowledge this, at least to an extent, in stating, "[t]his motion gives this Court *another chance* to exercise its equitable authority to craft broad injunctive relief." (Pl.'s Mot. (dkt. #213) 16) (emphasis added). Whatever the procedural circumstances, the court is still not persuaded that a sweeping injunction on all transmission line construction *as a whole* is appropriate.

To begin considering this motion as one for a regular injunction, plaintiffs have not, and likely will not, succeed on the merits, at least as defined by preventing construction on private land owned by the transmission companies and not covered under existing, federal permits. Most notably, the court has already found at summary judgment defendants properly complied with the Clean Water Act and various Corps permitting processes. *Nat'l Wildlife*, No. 21-CV-096-WMC, 2022 WL 136829. While the court also struck down the Refuge Act and EIS actions, the EIS's relevance was only marginally limited to the potential for federal funding. Additionally, contrary to plaintiffs' assertion, there is no evidence that the utilities have already been building in the refuge against court orders. As such, the current construction is *not* taking place on the only land directly protected by this court's rulings and issuance of an injunction in favor of plaintiffs. Thus, plaintiffs' success at summary judgment has little to do with whether they can successfully challenge the actual areas of building.

Indeed, for private land (or land that implicates state law rather than federal), plaintiffs have not persuasively argued this federal court has jurisdiction *at all*. Specifically, plaintiffs argue that "federal courts have authority to enjoin conduct on private land if necessary to preserve the public lands under threat." (Pl.'s Mot. (dkt. #213) 17.) Yet the

5

cases that plaintiffs cite do *not* support such an assertion, instead addressing tangentially related matters at best. *See Kleppe v. New Mexico*, 426 U.S. 529, 545 (1976) (holding that the Wild Free-roaming Horses and Burros Act does not intrude on state sovereignty over wild animals); *see also Highway J Citizens Grp. v. Mineta*, 349 F.3d 938, 962 (7th Cir. 2003) (holding that segmentation of projects for NEPA review is permissible). In fact, neither case discusses injunctions, and the court is hard-pressed to find any support whatsoever for plaintiffs' stated principle in the given citations.

    As such, plaintiffs have not persuasively shown that an injunction covering private land is permissible, much less necessary. If the utilities choose to take a chance by building stretches of a possible transmission line across pieces of land that do not require permits despite lacking a guaranteed path to connect those lines across a protected refuge, that is for the companies to pursue, whether wisely or in folly. Said another way, there is nothing in that activity implicating a federal court's jurisdiction. As such, plaintiffs' likelihood of success is attenuated at best. Without showing any likelihood of success, or even making a compelling case for the court to exercise its jurisdiction in the first place, there would appear no basis for the court to reconsider its previous denial of such an injunction.

    Similarly, if the court viewed this request as purely a motion for reconsideration, plaintiffs have still not carried their burden. "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F.Supp. 656, 665 (N.D.Ill.1982), aff'd, 736 F.2d 388 (7th Cir.1984). Here, plaintiffs do not identify any manifest errors of law or new evidence. The only factual change that *may* have been relevant is the utility companies'

request for federal funding, triggering the requirement that an EIS be performed. To date, however, the utilities assert that they have yet to seek federal funding. (Intervenor-Defs.' Opp'n. (dkt. #) 8.) Even if the utilities *had* sought federal funding, the EIS is simply needed for the federal government to approve grants for the project. Accordingly, it would appear that the utilities may build whether or not the grants are issued, so long as they are willing to face the risk that they will ultimately not receive the funds. As such, plaintiffs have offered no legal errors or changed factual circumstances that would warrant reconsideration.

Finally, plaintiffs return to this court's admonishment at summary judgment that the utilities' "proposed 'wait and see' method of proceeding amounts to little more than an orchestrated trainwreck at some later point in this lawsuit." *Nat'l Wildlife Refuge Ass'n v. Rural Utitlities Serv.*, No. 21-CV-096-WMC, 2022 WL 136829, at *7 (W.D. Wis. Jan. 14, 2022). However, this statement was meant to underscore for the utilities themselves the actual risks they were shouldering by choosing to build despite the substantial risk it could be halted, or at least redirected, rather than prohibit all construction activities.

While the court noted that the transmission companies may be nearing an orchestrated trainwreck, that choice is for the companies and their ratepayers to make, so long as it is understood that this court will not be persuaded to allow building in protected areas with a permit simply because the transmission companies plowed ahead with ground-clearing without assurances that the fish and wildlife crossing will be approved.

ORDER

IT IS ORDERED that:

(1) The motions to file *Amicus Curiae* briefs (dkts. ##225, 227) and plaintiffs' motion for leave to file a reply brief (dkt. #242) are GRANTED.

(2) Defendants' motion to strike plaintiffs' declarations (dkt. #230) is DENIED AS MOOT.

(3) Plaintiffs motion for injunction pending appeal (dkt. #212) is DENIED.

Entered this 4th day of August, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge